# COURT OF APPEALS
## DECISION
## DATED AND FILED

### September 16, 2020

**Sheila T. Reiff**
**Clerk of Court of Appeals**

## NOTICE

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2018AP2289-CR**

Cir. Ct. No.  2015CF1395

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

NIKOLA STEVLIC,

   DEFENDANT-APPELLANT.

           APPEAL from a judgment and an order of the circuit court for Waukesha County:  MICHAEL P. MAXWELL, Judge.  *Affirmed*.

           Before Neubauer, C.J., Gundrum and Davis, JJ.

           **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Nikola Stevlic appeals from a judgment convicting him of two counts of second-degree sexual assault by use of force; false imprisonment; two counts of substantial battery intending bodily harm; second-degree recklessly endangering safety, all with a domestic-abuse penalty enhancer; and exposing a child to harmful descriptions. He also appeals from an order denying his motion for postconviction relief based on his claim of ineffective assistance of counsel. We affirm the judgment and order.

¶2 Stevlic was charged with sexually assaulting and repeatedly and savagely beating his wife, N.S., between September 23 and October 22, 2015, after N.S. admitted to having an affair. Some of the beatings were in the presence of their young child.

¶3 Pretrial, the State moved to admit two instances of other-acts evidence (the Illinois evidence) for the "purposes of establishing the defendant's motive, intent, and common scheme" of humiliating and punishing N.S. for her affair. The motion alleged that, according to N.S., on October 2, 2015, while staying at Stevlic's mother's condo in Buffalo Grove, Illinois, Stevlic behaved in sexually "erratic" ways, including coercing N.S. to have "aggressive" sex after he rubbed cocaine on his genitals, sending N.S. text messages about sexual scenarios, and making her call one of her friends to arrange a threesome. On October 8, 2015, in Deerfield, Illinois, again according to N.S., Stevlic told her to buy a wig similar to her mother's hair and saying he, she, and her mother should have a threesome, and the next evening punched N.S. in the jaw and on her thigh, causing significant bruising. N.S. did not report either of the Illinois incidents.

¶4 The court admitted the other-acts evidence, explaining that it was relevant due to the similarity in nature to the acts alleged in the complaint; that the

probative value of the proffered evidence was not substantially outweighed by its prejudicial effect; and that it would consider a cautionary instruction on the other-acts evidence if requested and warranted. At a later hearing, the court explained that "everything surrounding" the Illinois evidence was admissible under the order but that other acts not part of the State's motion would not be admissible.

¶5 After a three-day trial, the jury found Stevlic guilty of seven of the eight charges, acquitting him of strangulation and suffocation. The court imposed consecutive sentences on each count for a total of forty years' initial confinement and thirty-two years' extended supervision.

¶6 Postconviction, Stevlic sought subpoenas for text and cell phone records for his and N.S.'s numbers, claiming he believed they could have impacted his trial and now were important for postconviction counsel's investigation. The court directed Stevlic's counsel, Attorney Peter Wolff, to ***State v. O'Brien***, 223 Wis. 2d 303, 588 N.W.2d 8 (1999), which addresses the legal standard for postconviction discovery requests, but denied Stevlic's request.

¶7 Stevlic filed a second postconviction motion asserting ineffective assistance of counsel. He claimed Wolff failed to: (1) request a ***Daubert***[1] hearing to challenge the State's domestic-violence expert; (2) object to hearsay; (3) investigate potential defense witnesses spouses Karina and Oscar Napoles, the Stevlics' friends, and Michael Stevlic, Stevlic's nephew; (4) either sever the sexual-assault charges or have Stevlic plead guilty to the physical assaults; (5) object to the other-acts evidence; and (6) investigate N.S.'s background.

---

[1] *See **Daubert v. Merrell Dow Pharm., Inc.***, 509 U.S. 579 (1993).

3

¶8     The court granted Stevlic a ***Machner***[2] hearing, which spanned two days.  After hearing testimony from Wolff and Karina and Oscar, the court rejected Stevlic's claims, holding as to each that Wolff either had not performed deficiently or that Stevlic was not prejudiced.  This appeal followed.

### *I.  Trial Court Error in Admitting Other-Acts Evidence*

¶9     Stevlic first contends the trial court's admission of other-acts evidence infected the entire trial.  When deciding whether to allow other-acts evidence, Wisconsin courts look to WIS. STAT. § 904.04(2)(a) (2017-18),[3] and apply the three-step analytical framework set forth in ***State v. Sullivan***, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998).  The decision to admit other-acts evidence is reviewed for an erroneous exercise of discretion.  ***Id.*** at 780.  "A [trial] court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and uses a demonstrably rational process to reach a conclusion that a reasonable judge could reach," ***American Family Mut. Ins. Co. v. Golke***, 2009 WI 81, 43, 319 Wis. 2d 397, 768 N.W.2d 729.

¶10     Under ***Sullivan***, the State may present evidence of a defendant's prior bad acts if it (1) is offered for a permissible purpose under WIS. STAT. § 904.04; (2) meets the two relevancy requirements under WIS. STAT. § 904.01; and (3) its risk of unfair prejudice under WIS. STAT. § 904.03 does not substantially outweigh its probative value.  ***State v. Marinez***, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399.  The party seeking to admit the other-acts

---

[2]  *See **State v**. **Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[3]  All references to the Wisconsin Statutes are to the 2017-18 version unless noted.

evidence bears the burden of establishing the first two prongs by a preponderance of the evidence. *Id.* As to prong two, the greater the similarity between the other act and the charged offense, the more relevant and probative is the other-acts evidence. *Sullivan*, 216 Wis. 2d at 786-87. The burden then shifts to the party opposing admission of the other-acts evidence to show that the probative value of the evidence is substantially outweighed by the risk or danger of unfair prejudice. *Id.*

¶11 Stevlic asserts that the trial court's other-acts order was deficient because it did not contain a separate *Sullivan* analysis for each other-acts incident and failed to relate the specific facts of this case to the *Sullivan* analytical framework. We disagree. Even if the trial court had not provided a *Sullivan* analysis to the degree Stevlic demands—a premise with which we disagree—we generally look for reasons to sustain a trial court's discretionary decisions, and thus may independently review the record. *See State v. Hunt*, 2003 WI 81, ¶¶4, 34, 263 Wis. 2d 1, 666 N.W.2d 771.

¶12 Below, Stevlic largely hung his hat on the third prong of the analysis, arguing that if the jury believed the Illinois evidence based solely on N.S.'s word, it would unfairly prejudice him in regard to the charged crimes. We are satisfied that the court's written decision adequately discusses the relevant case law and reflects the parties' arguments revealed in the other-acts evidence motion hearing transcript, and thus fully addresses Stevlic's points. We see no erroneous exercise of discretion.

## II. Ineffective Assistance of Counsel

¶13 To prevail on an ineffective assistance claim, a defendant must show that trial counsel's performance was deficient and that the deficient performance

prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is proved if the defendant shows that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (citing *Strickland*, 466 U.S. at 687). The proper measure is reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688. Matters of reasonably sound strategy, without the benefit of hindsight, are "virtually unchallengeable" and do not constitute ineffective assistance. *See id.* at 690-91.

¶14     Prejudice is proved if the defendant establishes by a preponderance of the evidence "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Showing some conceivable effect on the outcome is not enough. *State v. Erickson*, 227 Wis. 2d 758, 773, 596 N.W.2d 749 (1999). We review counsel's performance and prejudice as mixed questions of law and fact. *Johnson*, 153 Wis. 2d at 127. If a defendant's claim fails on either component, we need not address the other. *See Strickland*, 466 U.S. at 697.

¶15     Stevlic contends Wolff performed deficiently in five ways and that, whether each is considered alone or in the aggregate, he was prejudiced. Stevlic did not meet the high bar of proof on either prong.

*A.  Failure to Investigate*

¶16     Stevlic asserts that Wolff unreasonably failed to conduct any investigation whatsoever. Specifically, he claims that, at least partly because of Wolff's admitted inexperience in handling a sexual-assault case, Wolff neither

interviewed witnesses himself nor hired an investigator to explore N.S.'s background or the nature of the potential testimony of Oscar and Karina or of Michael Stevlic. Stevlic contends the investigation would have provided critical impeachment evidence against N.S., the State's key witness, which would have contradicted N.S.'s claims of sexual assault and battery.

¶17     Counsel either must "reasonably investigate the law and facts or make a reasonable strategic decision that makes any further investigation unnecessary." *State v. Domke*, 2011 WI 95, ¶41, 337 Wis. 2d 268, 805 N.W.2d 364. We review the reasonableness of trial counsel's decisions not with the benefit of hindsight but in the context of the circumstances that existed when counsel's decisions were made. *State v. Pico*, 2018 WI 66, ¶22, 382 Wis. 2d 273, 914 N.W.2d 95.

¶18     Stevlic contends Karina would have testified, as she did at the *Machner* hearing, that she and N.S. became friends through Oscar's and Stevlic's close friendship; that, although N.S. confided "girlfriend" things to her, including sexual intimacies, N.S. never mentioned forced sexual or physical assaults; that N.S. said she had told Stevlic he could beat her due to her deep regret about her affair, and that N.S. said the first Illinois incident, the weekend of October 2-3, 2015, was "the best sex ever." On cross, Karina testified that when she called N.S. during N.S.'s October 23, 2015 hospitalization after "[Stevlic] hit her," she did not know N.S. had suffered broken ribs, vertebral fractures, a black eye, and bruising so severe she could not sit, but that N.S. did tell her a coworker said she would call the police if N.S. did not; and that Stevlic later acknowledged "hitting" N.S.

¶19     Stevlic claims Oscar would have testified, consistent with his *Machner* hearing testimony, that he does not believe Stevlic is a violent person; he

never saw Stevlic act violently towards N.S.; Stevlic said he did not rape N.S. and that Stevlic said N.S. had no broken bones or bruises; N.S. never told him that Stevlic raped her; he and Karina were with Stevlic and N.S. on the weekend of the first other-acts event and on October 3 not only did N.S. not appear injured or traumatized, but the couple acted affectionately towards each other.

¶20    Stevlic claims his nephew Michael would have testified that he heard N.S.'s nephew say that N.S.'s family was going to "screw over [Stevlic] in court."

¶21    While Wolff included Karina on the witness list, she was unavailable at the time of trial, as she was in the last months of a high-risk pregnancy, was on bedrest, and had been forbidden by her obstetrician to travel. Wolff testified that Stevlic did not want to request a trial continuance and that the prosecutor said he would object to Karina appearing by telephone. Wolff also believed he could present the same information of consensual activity through other means, such as photographs and graphic texts between Stevlic and N.S. Oscar's testimony only would have repeated what Stevlic told him, and Michael's would have been hearsay.

¶22    Even if Wolff's decision not to investigate these witnesses was not reasonable, Stevlic has not shown prejudice. There is no evidence that Stevlic informed Wolff of potentially helpful, admissible testimony that Oscar or Michael could have provided. Karina's and Oscar's proposed testimony primarily related to the October 2 through October 3 other-acts evidence, which reflected poorly on N.S., not to the charged crimes, so testimony allegedly rebutting it likely would not have affected the outcome. As N.S. testified that she did not tell Karina or Oscar about her claim that Stevlic sexually assaulted her on September 23, Karina

and Oscar's testimony of their unawareness would have been duplicative and would not have eroded N.S.'s credibility.

¶23    In addition, N.S.'s testimony by itself was powerful.  She described in detail the brutality of the assaults, the events leading up to them, and her resulting pain and injuries.  Medical records and photographs, and other testimony, also would have starkly contradicted Oscar's testimony that Stevlic told him N.S. had no broken bones or bruises, which would have harmed Stevlic's credibility.  A police officer, an EMT, a detective, the physician's assistant who attended to N.S. on her admission to the hospital, and the coworker who said she would call the police if N.S. did not all testified about the physical signs of injury they observed.  Other evidence, including zip ties like those N.S. said were used during her assaults, were recovered from the Stevlic home.

¶24    Further, had Oscar testified about Stevlic's character for nonviolence, we fail to see how the result would have been different.  Stevlic himself testified that he slapped, punched, and hit N.S.  Nephew Michael's proposed testimony largely consisted of inadmissible hearsay and therefore it too could not have affected the outcome of the trial.  WIS. STAT. § 908.01(3).  Given the overwhelming evidence of Stevlic's guilt, there is not a reasonable probability that this proposed evidence would have altered the outcome.

### B.  Failure to Move to Sever or Propose That Stevlic Plead Guilty to Physical Assault Counts

¶25    Stevlic argues that Wolff should have had him proceed to trial on the sexual assault counts alone, either by having him plead guilty to the physical assaults or by moving to sever the counts, as the alleged sexual assault charges occurred over two weeks before the battery charges and involved completely

different conduct. Stevlic claims he was prejudiced because his testimony that he beat N.S., the State's production of dozens of gruesome photos of the result of the beatings, used zip ties, wire cutters, and his belt, and hundreds of text messages, plus other-acts evidence were completely irrelevant and unduly prejudicial in regard to the sexual-assault counts. He also asserts that Wolff discredited him as a witness by conceding his guilt during closing arguments.

¶26 Wolff testified that he and Stevlic discussed that, faced with strong physical-assault evidence, the jury could find denials of the sexual assaults more credible if he admitted to the beatings, thus leading, hopefully, to an acquittal on the sexual-assault counts. Indeed, his honesty may have gained him some credibility, as the jury acquitted him of strangulation and suffocation. Further, Wolff testified, and the State agreed, that even had Stevlic pled to the physical assaults, the State would not have dropped the sexual-assault charges or stipulated to limiting the photographic or text-message evidence. It is unlikely Stevlic would have been acquitted of the sexual assaults had the charges been tried separately.

*C. Failure to Make Hearsay Objections*

¶27 Stevlic complains that Wolff objected only twice to the "intolerable" amounts of hearsay that "flooded" the jury. For example, a colleague of N.S. (N.S. is a pharmacist), testified that he sold her a "morning-after" pill because she told him that the night before Stevlic had forcible sex with her. The physician assistant who treated N.S. at the hospital testified that N.S. told her that Stevlic forced her to have intercourse, that Stevlic said he wished she would kill herself or that he could beat her to the point of immobility, and that when their three-and-a-half-year old son witnessed Stevlic beating N.S., he told the boy that "Mommy was bad and needed to be punished." Wolff testified that he "wanted to be

careful" as he proceeded, as "[w]e had a juror or two crying … early on in the testimony," so "if you're constantly objecting … a jury can turn on you" and "it could go poorly."

¶28    Not objecting so as to not call unwanted jury attention to evidence may constitute reasonable trial strategy in the context of an ineffective assistance of counsel claim. *See* **State v. Cooks**, 2006 WI App 262, ¶44, 297 Wis. 2d 633, 726 N.W.2d 322.  Counsel's trial strategy decisions, even those appearing unwise in hindsight, will not constitute ineffective assistance of counsel if they are "reasonably founded on the facts and law under the circumstances existing at the time the decision was made." **State v. Snider**, 2003 WI App 172, ¶22, 266 Wis. 2d 830, 668 N.W.2d 784.

¶29    Even if Wolff deficiently failed to object, Stevlic was not prejudiced. Stevlic's arguments rely on faulty assumptions that certain statements were inadmissible hearsay.  For example, his complaints that Wolff failed to lodge hearsay objections to testimony from State witnesses relate to Stevlic's own statements. *See* WIS. STAT. § 908.01(4)(b)1.  The physician assistant's testimony is an exception to the hearsay rule, as it is related to medical diagnosis or treatment.  WIS. STAT. § 908.03(4).  Further, the evidence to which Stevlic now objects was available for him to attack at trial.  Indeed, Wolff cross-examined N.S. and other witnesses about N.S.'s prior statements, including instances where she failed to report the sexual assaults.  Given the significant evidence against Stevlic, there is no reasonable likelihood of a different result.

### D.  Failure to Adequately Object to Other-Acts Evidence

¶30    As noted, much of the other-acts evidence already was admitted. Even had Wolff objected, apart from his assessment that too many objections can

11

be counterproductive, some of that evidence favored Stevlic, as it showed N.S. in a poor light. Thus, apart from being sustainably reasonable judgment calls, if Wolff's failure to object was deficient, it did not prejudice Stevlic. And the court's limiting instruction regarding evidence of other conduct, *see* WIS. JI–CRIMINAL 275, minimized the risk of unfair prejudice. *See **State v. Hammer***, 2000 WI 92, ¶36, 236 Wis. 2d 686, 613 N.W.2d 629.

### E. Failure to Request ***Daubert*** *Hearing*

¶31 Stevlic contends Wolff should have requested a ***Daubert*** hearing regarding Latrice Hogan, the State's domestic-violence expert. He contends the "Duluth Model" power-and-control wheel depicting the cycle of violence and battered-women's syndrome about which Hogan would testify is not premised on scientific data and was something she played no role in developing. Wolff testified at the ***Machner*** hearing that the failure to challenge Hogan's testimony was a strategic decision, made after consultation with Stevlic, based on the generalized nature of her testimony which he viewed as harmless to the chosen trial strategy of admitting physical abuse.

¶32 Hogan testified to her significant educational and experience, how she applies the power-and-control wheel to her clinical work, how each spoke of the wheel is connected to the overall power-and-control dynamic present in domestic violence, and how she uses the model in her treatment of domestic-violence victims. A person with significant experience working with domestic-abuse victims is qualified to testify as an expert on domestic abuse. *See **State v. Smith***, 2016 WI App 8, ¶10, 366 Wis. 2d 613, 874 N.W.2d 610. The court found that her considerable "knowledge, skill, experience, training, [and] education" met the requirements of WIS. STAT. § 907.02, such that she was qualified to testify as

12

an expert. A ***Daubert*** objection would not have been well taken. Counsel is not ineffective for failing to make meritless arguments. *See **State v. Toliver***, 187 Wis. 2d 346, 360, 523 N.W.2d 113 (Ct. App. 1994).

¶33 Taking each claim of ineffectiveness individually and in the aggregate, we conclude Stevlic has not demonstrated by a preponderance of the evidence that Wolff rendered ineffective assistance.

### III. New Trial in the Interest of Justice

¶34 Stevlic next asserts that we should grant him a new trial in the interest of justice because the real controversy—whether he raped N.S.—was not fully tried. *See* WIS. STAT. § 752.35.

¶35 We may grant a new trial in the interest of justice "whenever the real controversy has not been fully tried." ***State v. Wyss***, 124 Wis. 2d 681, 735, 370 N.W.2d 745 (1985). The real controversy is not fully tried when the jury either was not given an opportunity to hear important testimony bearing on an important issue in the case or had before it improperly admitted testimony or evidence that obscured a crucial issue. ***State v. Burns***, 2011 WI 22, ¶24, 332 Wis. 2d 730, 798 N.W.2d 166. A new trial in the interest of justice also is required when the jury is not properly instructed. *See **Peters v. State***, 70 Wis. 2d 22, 28, 233 N.W.2d 420 (1975).

¶36 Stevlic contends Oscar's and Karina's testimony would have worked in his favor. To start with, this implicates the ineffectiveness claim we have previously resolved, rather than an evidentiary error by the trial court cognizable as an interest of justice claim. *See **Burns***, 332 Wis. 2d 730, ¶45. Moreover, his sexual assault charges stemmed from his conduct on September 23, 2015, whereas

Oscar's and Karina's testimony related to the October 2 through October 3 Buffalo Grove weekend. No sexual assault claim came from that weekend. Stevlic also resurrects his objection to expert witness Hogan. As noted, the court found her qualified. We will not second-guess that determination. These arguments go nowhere.

¶37 Stevlic also argues that the State exceeded the bounds of the court's other-acts ruling by raising the Buffalo Grove events, including references to Stevlic's request that N.S. find a wig that would make her look like her mother, his repeated demands that she participate in either an actual or simulated sexual threesome, and introducing numerous explicitly sexual text messages. Again, however, he fails to tie this to an evidentiary error by the trial court, and much of the evidence was closely interwoven with evidence related to the physical assaults.

¶38 Finally, Stevlic argues that a new trial is warranted because the court did not fully read WIS. JI–CRIMINAL 484, "Verdicts Submitted for One Defendant: Two Counts: Separate Verdict on Each Count Required." The relevant portion of WIS. JI–CRIMINAL 484 reads:

> It is for you to determine whether the defendant is guilty or not guilty of each of the offenses charged. You must make a finding as to each count of the (information) (complaint). *Each count charges a separate crime, and you must consider each one separately. Your verdict for the crime charged in one count must not affect your verdict on any other count.*

(Emphasis added.)

¶39 Whether by oversight or design, the court did not read the two italicized sentences. The commentary to the instruction explains that "[t]he last two sentences have been added for the situation where joinder of charges, while

proper, exposes the defendant to considerable prejudice in that the jury may use the fact of being charged with one offense as proof that the other offense was committed." *Id.* at n.8.

¶40     *Peters* teaches that a jury be "clearly and unequivocally instructed" that it cannot use evidence of one count as proof of guilt on another. *Peters*, 70 Wis. 2d at 32. Peters was charged with burglary and theft and with obstruction for having provided a false alibi; the offenses were joined in a single information and tried at the same time. *See id.* at 27-28. The circuit court held that the charges were properly joined, as Peters' putting forward a false alibi—his untrue whereabouts after the crimes—took place during a John Doe investigation of the other two crimes. *See id.* The supreme court ruled, however, that giving WIS. JI–CRIMINAL 145, "Information Not Evidence," at trial did not go far enough, as the State could not rely on Peters' false alibi in lieu of evidence placing him at the scene of the crimes. *See Peters*, 70 Wis. 2d at 30-32. In other words, Peters' lying about his whereabouts should not implicate his guilt as to whether he committed a theft and burglary, so failing to deliver a proper cautionary instruction on the prejudicial effect of joinder caused a miscarriage of justice requiring a new trial. *Id.* at 28. "Such a cautionary instruction must be given in clear and certain terms, because otherwise there is a strong likelihood that the jury will regard the evidence on the obstructing-an-officer count as sufficient in itself to find the defendant guilty of burglary." *Id.* at 32.

¶41     In response to *Peters*, a pattern jury instruction was created to alert juries that the verdict for one crime must not affect its verdict on the other. WIS. JI–CRIMINAL 484 n.8. Such a cautionary instruction presumptively cures any prejudice that may have resulted from joinder of the obstruction charges to the

sexual assault. *See State v. Hoffman*, 106 Wis. 2d 185, 212, 316 N.W.2d 143 (Ct. App. 1982).

¶42    The harm to Peters was that the deceit inherent in the obstruction charge tainted the presumption of innocence on the other charges. Here, by contrast, the jury was instructed that each count charged a separate crime, each should be considered separately, and Stevlic's guilt or innocence as found with respect to one crime must not affect the verdict on the other count.

¶43    If charged offenses are properly joined for trial, it is presumed that the defendant will suffer no prejudice from the joinder. *State v. Linton*, 2010 WI App 129, ¶20, 329 Wis. 2d 687, 791 N.W.2d 222. The defendant may rebut that presumption. *State v. Leach*, 124 Wis. 2d 648, 669, 370 N.W.2d 240 (1985). This requires a showing of substantial, not just some, prejudice to the defense. *Hoffman*, 106 Wis. 2d 185, 209-10. "The danger of prejudice arising from the jury's exposure to evidence that the defendant committed more than one crime is minimized when the evidence of both counts would be admissible in separate trials." *Id.* at 210.

¶44    The court could, and should, have more explicitly instructed the jury to consider each charge separately consistent with the pattern instruction. Nonetheless, we cannot conclude that it prevented the sexual-assault claims from being fully or fairly tried. Notably, Stevlic did not object to the trial court's failure to read these two sentences at trial or in his postconviction motion and it formed no part of his ineffective assistance claim at trial and does not now do so on appeal. We do not view the trial court's failure to include these two sentences— an omission that could have been easily rectified with an objection—as giving rise to plain error. *See State v. Jorgensen*, 2008 WI 60, ¶¶21-23, 310 Wis. 2d 138,

754 N.W.2d 77 (under WIS. STAT. § 901.03(4), the plain-error doctrine, the appellate court may review a previously unobjected-to error where the defendant shows that the error was "fundamental, obvious, and substantial" and where the State fails to show that the error was harmless.) The court clearly instructed the jury as to the elements of the sexual-assault charges and that it could use other-acts evidence only for limited purposes. Thus, the court properly instructed the jury on the use of other evidence in determining its verdict on the sexual-assault counts. While it would have been advisable for the court here to read the last two sentences of WIS. JI–CRIMINAL 484, we do not think the omission commands a retrial.

## IV. Denial of Postconviction Discovery Request

¶45    Stevlic also contends the trial court should have signed two subpoenas he filed to obtain and preserve around 2000 deleted text messages from N.S.'s cell phone he claimed "may be exculpatory or helpful to this process." He asserts he was entitled to the discovery because he could: (1) "describe the material sought to be discovered and explain why the material was not supplied or discovered at or before trial"; (2) "establish that alternative means or evidence is not already available such that the postconviction discovery is necessary to refute an element in the case"; (3) "describe what results [he] hopes to obtain from discovery and explain how those results are relevant and material to one of the issues in the case"; and (4) show that "the anticipated results … would also create a reasonable probability of a different outcome." *O'Brien*, 214 Wis. 2d 328, 343, 572 N.W.2d 870 (Ct. App. 1970). He argues the court erroneously found that he failed the *O'Brien* test.

¶46 We find that the circuit court properly denied the request. "[A] defendant has a right to post-conviction discovery when the sought-after evidence is relevant to an issue of consequence," that is, "evidence that probably would have changed the outcome of the trial." *O'Brien*, 223 Wis. 2d 303 at 321. The "mere possibility that an item of undisclosed information might have helped the defense" is not enough. *Id.* Simply asserting that the text messages were "necessary for purposes of [his] independent investigation" to "refute … [N.S.'s] consent to the alleged rapes," without more, does not satisfy the *O'Brien* standard. If Stevlic believed that there was something in these 2000 messages that would have assisted in his postconviction motion, the time to specifically explain what he believed the messages would show—at a minimum some detail as to how they might be exculpatory—was when he filed his motion.[4]

## V. Improper Sentence

¶47 Lastly, Stevlic asserts that the court impermissibly used the sexual-assault counts as a means to increase his initial confinement for his physical assault counts by ordering, without justification, that all of his sentences be served consecutively. He requests a new sentencing hearing.

---

[4] The State incorrectly argues that Stevlic was required to timely appeal from the trial court's order denying postconviction discovery and that his failure to do so deprives our court of the jurisdiction to consider this issue. This argument apparently rests on the plain language of the discovery order, which states, "THIS IS A FINAL ORDER FOR PURPOSES OF APPEAL." In fact, we have always treated rulings on postconviction discovery requests as *nonfinal*, meaning any challenge to the court's denial of such request is properly raised as part of the appeal from the order denying postconviction relief. *See, e.g.*, *State v. O'Brien*, 223 Wis. 2d 303, 308, 319-23, 588 N.W.2d 8 (1999). As our supreme court has noted, "there may be cases in which a document states that it is final for purposes of appeal … but does not actually 'dispose of the entire matter in litigation as to one or more of the parties' as required by [WIS. STAT.] § 808.03(1)." *Wambolt v. West Bend Mut. Ins. Co.*, 2007 WI 35, ¶46 n.19, 299 Wis. 2d 723, 728 N.W.2d 670. In such case, as here, the document cannot be a final order or judgment as a matter of law.

¶48 Review of a sentencing decision is "limited to determining if discretion was erroneously exercised." *State v. Gallion*, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. Discretion is erroneously exercised when a sentencing court imposes its sentence based on or in actual reliance upon clearly irrelevant or improper factors. *Id.* Sentencing decisions are afforded a presumption of reasonability consistent with our strong public policy against interference with the circuit court's discretion. *Id.*, ¶18. The defendant thus bears the heavy burden of showing that the circuit court erroneously exercised its discretion and must prove otherwise by clear and convincing evidence. *See State v. Harris*, 2010 WI 79, ¶34, 326 Wis. 2d 685, 786 N.W.2d 409.

¶49 The trial court has "wide discretion" in deciding whether to impose consecutive sentences. *State v. Davis*, 2005 WI App 98, ¶27, 281 Wis. 2d 118, 698 N.W.2d 823; *see* WIS. STAT. § 973.15(2)(a). The trial court properly exercises its discretion in imposing consecutive sentences by considering the same factors it applies in determining the overall length of sentence. *State v. Berggren*, 2009 WI App 82, ¶46, 320 Wis. 2d 209, 769 N.W.2d 110.

¶50 The court here applied the proper sentencing factors and thoroughly explained its sentencing decision. Contrary to Stevlic's claim, the circuit court is not required to separately explain why it is imposing consecutive sentences. We see no error.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.