STATE of Wisconsin, Plaintiff-Respondent,

v.

Larry J. SMITH, Defendant-Appellant.†

Court of Appeals

*No. 2014AP2653–CR. Submitted on briefs November 10, 2015.—Decided December 9, 2015*

2016 WI App 8

(Also reported in 874 N.W.2d 610.)

† Petition for Review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Martha K. Askins* and *Sara K. Brelie*, assistant state public defenders of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Aaron R. O'Neil*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶ 1. REILLY, P.J. Larry Smith was convicted by a jury of two counts of repeated sexual assault of a child and one count of second-degree sexual assault of a

child. Smith argues that the court erred in permitting expert testimony by a social worker that did not meet the reliability standards established by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and that he received ineffective assistance of counsel when his counsel elicited statements at trial that the victim was truthful.

¶ 2. We affirm. The court properly considered other indicia of reliability in permitting expert testimony from a social worker who had extensive experience with child sexual assault victims and the behaviors exhibited by such victims. We also find that Smith's counsel was not ineffective in pursuing a trial strategy aimed at impeaching an investigator who believed she could "read people's minds."

### Expert Testimony

¶ 3. Prior to trial, the State notified Smith that it intended to call Paula Hocking, director of the Walworth County Children's Advocacy Center, to testify as an expert witness regarding reactive behaviors common among child abuse victims. Smith filed a motion to exclude Hocking's testimony as it did not meet the requirements of WIS. STAT. § 907.02 (2013–14)[1] and *Daubert*. At a hearing on Smith's motion, the court agreed that Hocking's testimony "was not amenable to the five factor test under *Daubert*." Relying on persuasive authority from other jurisdictions, however, the court determined that it could "look at other indicia of reliability" and ruled Hocking's testimony admissible as similar testimony had been admitted previously both in Wisconsin and in jurisdictions governed by

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

*Daubert* and as Hocking had "sufficient knowledge, skill, experience, training or education, in order to qualify her as an expert."

██

¶ 4. Smith challenges the admission of Hocking's expert testimony. We review the admission of expert testimony for an erroneous exercise of discretion. *State v. Giese*, 2014 WI App 92, ¶ 16, 356 Wis. 2d 796, 854 N.W.2d 687. Under this standard, we will not reverse the court's decision "if it has a rational basis and was made in accordance with accepted legal standards in view of the facts in the record." *Id.* Smith argues that the court's decision to admit Hocking's testimony did not have a rational basis supported by the record as the State did not present an expert report detailing her proposed testimony and did not show how the testimony fit the five reliability factors outlined in *Daubert*. We disagree.

██ ██

¶ 5. WISCONSIN STAT. § 907.02 governs the admissibility of expert testimony at trial. That statute provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

Sec. 907.02(1). The statute adopts the reliability test established by *Daubert*. *State v. Kandutsch*, 2011 WI

78, ¶ 26 n.7, 336 Wis. 2d 478, 799 N.W.2d 865. Under this test, the court's function "is to ensure that the expert's opinion is based on a reliable foundation and is relevant to the material issues." *Giese*, 356 Wis. 2d 796, ¶ 18. "The court is to focus on the principles and methodology the expert relies upon, not the conclusion generated," to ensure that those principles and methods have a reliable foundation in the expert's discipline. Id. The goal is to prevent the jury from being presented with speculation dressed up as an expert opinion. *Id.*, ¶ 19.

█

¶ 6. While the State did not provide an expert report on Hocking's opinion, it did provide an overview of her testimony in its notice of expert witnesses and at two court hearings on the matter. In the notice, the State provided that Hocking would testify "regarding reactive behaviors common among child abuse victims," including "child development, use of language, recantation, delayed disclosure, progressive disclosure, disclosure to a trusted person, recall, and minimization by the victim." The State provided more detail in a court hearing, stating that Hocking would not "testify about specifics involving this case" but that she would testify "about what, oftentimes, she sees victims of child sexual assault do. And she would testify about delayed disclosure, how it's quite common for children to wait to disclose." The State also provided that Hocking would testify "how child sexual assault victims often, perhaps, become withdrawn, their mood changes, they struggle academically, may act out" as well as "a wide range of behaviors that are common in child sexual assault cases." This provided a sufficient factual basis for the court's decision on whether to admit Hocking's testimony.

¶ 7. As for whether Hocking's testimony complies with WIS. STAT. § 907.02, we note that *Daubert* itself acknowledges that its test for the admissibility of expert evidence is "flexible." *Daubert*, 509 U.S. at 594. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999), the United States Supreme Court clarified that "the applicability of the factors mentioned in *Daubert* . . . depends upon the particular circumstances of the particular case at issue." The *Kumho Tire* Court further provided that trial courts should have "considerable leeway" in determining the admissibility of expert testimony with the objective of ensuring the reliability and relevancy of such testimony in light of the facts of the particular case. *Kumho Tire*, 526 U.S. at 152. Reliability may be based on the expert's own observations from his or her "extensive and specialized experience." *Id.* at 156.

¶ 8. In *Seifert ex rel. Scoptur v. Balink*, 2015 WI App 59, 364 Wis. 2d 692, 869 N.W.2d 493, we recently affirmed the trial court's decision to permit testimony by a medical expert despite the fact that the testimony did not align with the *Daubert* factors. The medical expert in *Seifert* provided testimony that the care provided by the physician-defendant, Balink, fell below the requisite standard of care in ways that increased the risk of injury. *Seifert*, 364 Wis. 2d 692, ¶¶ 5–7. Balink argued that the expert's opinions were not the product of reliable principles or methods as required by WIS. STAT. § 907.02(1) and *Daubert*, but rather were based on the expert's own personal preferences from his experience practicing medicine. *Seifert*, 364 Wis. 2d 692, ¶¶ 16, 28. Because those experiences could not be "challenged in some objective sense," Balink argued they were unreliable and there-

fore inadmissible. *Id.* (citation omitted). We rejected this argument, holding that the court did not erroneously exercise its discretion when it relied on the medical expert's expertise and knowledge as a practicing physician in admitting his testimony under § 907.02(1). *Seifert*, 364 Wis. 2d 692, ¶ 29.

■

¶ 9. Similar to *Seifert*, Hocking's proposed expert testimony did not neatly fit the *Daubert* factors. This did not, however, require exclusion. The court appropriately considered other factors bearing upon the reliability of the testimony, including Hocking's qualifications as director of the Walworth County Child Advocacy Center and more than two decades of experience working with child victims, and found that she had "sufficient knowledge, skill, experience, [and] training" to qualify her as an expert in the area of behaviors exhibited by child sexual assault victims. Furthermore, the court noted that Hocking's proposed testimony was similar to what had been allowed in federal courts already subject to the *Daubert* standard as well as pre-*Daubert* Wisconsin courts. Contrary to Smith's assertion that the trial court relied on decisions by other courts faced with different facts and different standards, the trial court's analysis simply acknowledged that Hocking's testimony was generally accepted within her discipline and was not the product of ungrounded speculation.

■■

¶ 10. We also reject Smith's argument that the State did not sufficiently establish Hocking's qualifications to qualify her as an expert. A trial court has broad discretion, as it does in other decisions on whether to admit or exclude evidence, to determine whether a witness is qualified to testify as an expert. *Martindale*

*v. Ripp*, 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698. The State submitted a curriculum vitae for Hocking that showed she had a bachelor's degree in social work and had been employed by the Walworth County Department of Human Services in child protective services for two decades followed by five years as director of the Walworth County Child Advocacy Center. Hocking had extensive training in child maltreatment and had provided training for others in the areas of child maltreatment, interviewing children, sexualized behaviors, and mandatory reporting. In court, the State represented that Hocking had specialized knowledge that she had developed over two decades of working with children and with other professionals who work with child sexual assault victims. The court did not erroneously exercise its discretion in finding Hocking qualified to provide expert testimony regarding her general observations of the behaviors of child sexual assault victims.

*Ineffective Assistance of Counsel*

¶ 11. Smith's case was tried before a jury. At trial, Investigator Lori Domino was called by the State and testified about her initial interview of the alleged victim, V.M.H. Under direct examination, Domino testified that V.M.H. was very distant and nervous at the start of the interview but

> when she started speaking, there was a sense of like a weight starting to be lifted; and you can just sense that when you start talking to a victim; when they start disclosing what's been happening to them, you can just see this aura around them just lifting that they're able to tell me what happened to them. And that's what happened with [V.M.H.].

On cross-examination, defense counsel questioned Domino about the extent of her investigation into V.M.H.'s allegations. As part of this questioning, she elicited from Domino that Domino had never asked V.M.H. where exactly the first sexual assault took place, that the only other person that Domino interviewed was the person to whom V.M.H. had initially disclosed the alleged assaults, and that she did not interview V.M.H.'s sister who shared the bedroom where V.M.H. alleged some of the assaults took place because V.M.H.'s parents told her that the sister "did not know anything." This exchange followed:

> [Defense Counsel]: So you weren't there to verify whether she was telling [the] truth or not; you were just there to collect what she was telling you?
>
> [Domino]: Who was telling me the truth?
>
> [Defense Counsel]: [V.M.H.]. You did nothing more than write down what [V.M.H.] said to you; you didn't do any further investigation other than collecting the evidence that you've stated?
>
> [Domino]: Well, I collected the evidence that she told me in her statement to me, which corroborated what she told me.
>
> [Defense Counsel]: Okay, but no other—you didn't question her on, on whether it could have happened or couldn't have happened; you just took, took what she said as being the truth?
>
> [Domino]: Yes.
>
> [Defense Counsel]: But you don't—I mean you testified under direct examination yesterday that you—it appeared that the weight of the world was being lifted off of her; is that correct?
>
> [Domino]: Yes.

[Defense Counsel]: You don't know whether she's telling the truth or not, do you?

[Domino]: I know she's telling the truth.

[Defense Counsel]: You know she's telling the truth?

[Domino]: Yes.

[Defense Counsel]: You were there that night?

[Domino]: I was not there.

[Defense Counsel]: You were there each and every Tuesday night she alleges this happens?

[Domino]: No.

[Defense Counsel]: Then how could you be so sure that she's telling the truth?

[Domino]: Based on the statements she gave me.

[Defense Counsel]: Okay, so if I told you I broke my leg but you can't see my feet, does that mean I broke my leg?

[Domino]: Based on how you direct it at me and how you tell me, yes, I will base it on if it's the truth or a lie.

[Defense Counsel]: So you can read someone's mind?

[Domino]: I can't read their mind.

. . . .

[Defense Counsel]: So you're sitting here today saying: I know she's telling the truth?

[Domino]: Yes.

[Defense Counsel]: And what is that based on? What she's told you?

[Domino]: Based on what she's told me.

¶ 12. Smith argues on appeal that his trial counsel was deficient as this line of questioning allowed Domino to testify that another witness, V.M.H., was telling the truth. In order to establish that trial counsel was ineffective, Smith must demonstrate that counsel's performance was both deficient and that this deficient performance was prejudicial to his defense. *See State v. Pitsch*, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). There is a strong presumption that counsel acted reasonably within professional norms. *State v. Swinson*, 2003 WI App 45, ¶ 58, 261 Wis. 2d 633, 660 N.W.2d 12. We will not reverse a "trial court's factual findings regarding counsel's actions unless they are clearly erroneous," but whether counsel's performance was deficient and whether the defendant was prejudiced are questions of law that we decide de novo. *State v. Snider*, 2003 WI App 172, ¶ 20, 266 Wis. 2d 830, 668 N.W.2d 784.

¶ 13. At the *Machner*[2] hearing, Smith's trial counsel testified that her strategy in questioning Domino was "to basically establish for the jury that she walked into this interview and essentially took what —what [V.M.H.] had said as being the gospel and did not do basically any other investigation." Trial counsel stated that she saw value in her cross-examination of Domino's ability to "read people's minds and determine whether or not they were truth telling or not" as "that was something that I believed the jury could see that,

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

you know—she was just so emphatic, I believed her, I believed her, I believed her. That I believe that it was effective in establishing that, you know, it started and stopped there." The court found that trial counsel's questioning of Domino was reasonable.

¶ 14. We agree with the trial court. Trial counsel's decisions were consistent with a valid trial strategy of showing that Domino made up her mind regarding V.M.H.'s allegations based on her initial interview and that Domino's investigation was directed at corroborating V.M.H.'s story rather than in testing its veracity. Counsel's trial strategy decisions, even those appearing unwise in hindsight, will not constitute ineffective assistance of counsel so long as they are "reasonably founded on the facts and law under the circumstances existing at the time the decision was made." *Snider*, 266 Wis. 2d 830, ¶ 22. We cannot say that it was unreasonable for defense counsel to cross-examine Domino regarding her ability to observe the lifting of "aura[s]" with the goal of demonstrating her subsequent investigation was limited due to her bias.

¶ 15. Smith also argues that trial counsel should have introduced evidence that Domino knew V.M.H. prior to the investigation into her allegations. He points to a statement that Domino made at the outset of her interview of V.M.H.: "So, [V.M.H.], you and I have known each other for about six, seven years." Smith argues that counsel should have questioned Domino further about this relationship if counsel wished to pursue a strategy of showing Domino's bias. We disagree. As the trial court stated, police in small communities often know many of the residents. Trial counsel stated she had no information to indicate that

627

Domino and V.M.H. were anything more than acquaintances, and Smith produced no evidence to contradict this statement. We see no deficient performance here.

*New Trial in the Interest of Justice*

¶ 16. Lastly, Smith argues that he is entitled to a new trial in the interest of justice pursuant to WIS. STAT. § 752.35. In support of this request, Smith rehashes his arguments about the admission of Hocking's testimony and trial counsel's cross-examination of Domino. As there is no merit to either of these arguments, we reject Smith's request.

*By the Court.*—Judgment and order affirmed.