COURT OF APPEALS
DECISION
DATED AND FILED

July 15, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1414-CR**

Cir. Ct. No. **2019CF196**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BOBBY L. COLEMAN, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: FREDERICK C. ROSA and AUDREY SKWIERAWSKI, Judges. *Affirmed*.

Before Donald, P.J., Geenen, and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Bobby L. Coleman, Jr., appeals his judgment of conviction entered after a jury found him guilty of strangulation and suffocation, battery, and disorderly conduct, all as a domestic abuse repeater with domestic abuse assessments. He also appeals the order denying his postconviction motion alleging ineffective assistance of counsel.[1] We affirm.

¶2 In December 2018, Coleman's live-in girlfriend, S.W., called police regarding an altercation with Coleman. S.W. told police that during an argument, Coleman had applied pressure to her neck so that she could not breathe. She said he also punched her in the head and body with a closed fist, and then kicked her several times while she was "curled into a ball on the floor" trying to protect herself. S.W. stated that Coleman then wrapped her hair around his fist and dragged her down the hall of her apartment to the bedroom, where he obtained a firearm and pointed it at her head. The responding officers noted that S.W. was "shaking and crying intermittently," and observed scratches and bruises on S.W.'s face and body.

¶3 The matter proceeded to a jury trial in August 2020. S.W. testified regarding the incident, which she said started as an argument after Coleman went through her phone and found old text messages from her previous boyfriend. S.W. stated that Coleman hit her in the eye with a closed fist, which caused swelling, and then started strangling her.

¶4 S.W. further testified that when she told Coleman they should break up, he grabbed her hair and dragged her down the hallway. However, when asked about her statement to police that Coleman had then pointed a gun at her, S.W.

---

[1] Coleman's trial was before the Honorable Frederick C. Rosa; we refer to him as the trial court. The Honorable Audrey Skwierawski heard and decided Coleman's postconviction motion; we refer to her as the postconviction court.

replied, "That was a different incident." The prosecutor also asked S.W. about Coleman kicking her, and she responded, "Not that particular day." The prosecutor then asked whether S.W. had told the police about "multiple incidents," to which Coleman's trial counsel objected. The trial court then ordered a sidebar out of the presence of the jury.

¶5 The sidebar discussion was on the record. Coleman's trial counsel noted a pretrial agreement that there would be no references to any other alleged incidents of abuse. The State acknowledged that agreement, with the prosecutor stating that it was not her intention to discuss other acts; rather, it was her understanding that the abuse described in the police report was all part of the same incident in December 2018. She agreed to stop that line of questioning.

¶6 The State introduced photographs of S.W.'s injuries that were taken after the incident in December 2018. The photos depicted injuries to S.W.'s arms, legs, foot, and lower back. She testified that all of the injuries were caused by Coleman "putting his hands on [her]."

¶7 The State also introduced a letter written by S.W. to Coleman's probation officer in January 2019. In the letter, S.W. said that she had lied to the police about Coleman causing her injuries, and that Coleman had never assaulted her. S.W. testified that she was lying when she recanted the assault allegations and said that she wrote the letter at Coleman's urging because he was "making [her] feel bad for what he had done to [her], the reason why he had to go get incarcerated." S.W. further testified that she feared there would be a "physical consequence" if she did not write the letter recanting her allegations as Coleman had directed. The State also introduced two subsequent statements written by S.W., in which she stated that

3

she had been lying in the letter when she recanted her allegations of the assault by Coleman.

¶8     During cross-examination, trial counsel elicited testimony from S.W. that she had not called the police for "a day or two" after the December 2018 incident. He questioned her as to why she had waited to contact the police, or why she had not asked anyone else for help. S.W. testified that she was "fearful," that she did not know her neighbors, and that Coleman had her phone and car keys. In fact, S.W. stated during the direct examination that she only felt safe testifying because he was handcuffed.

¶9     Also during cross-examination, counsel pointed out that there were no marks by S.W.'s eye or on her neck in the police photos to corroborate her testimony that Coleman had punched and strangled her. Counsel also observed that none of S.W.'s hair had been pulled out, although she had alleged that Coleman dragged her for approximately 30 feet by the hair. S.W.'s responses were that the photos were taken a couple of days after the incident; that she was wearing a lot of makeup when they were taken; and that she had hair extensions that were "sewn into her scalp." Counsel also asked S.W. about the recantation letter she had written, which was then followed by the subsequent statements disavowing the recantation, questioning her credibility.

¶10     An officer who investigated the incident also testified for the State. He stated that he took the photos of S.W.'s injuries, noting that she was wearing heavy makeup. He said that S.W. was "very scared" and "crying a lot." He further testified that she kept repeating that she was "afraid for her safety." On cross-examination, trial counsel elicited testimony from the officer that he did not see any

fingerprint marks on S.W., only bruising, and some "possible marking" on her neck that was "slightly off colored."

¶11    The State rested, and the defense called no witnesses. The jury found Coleman guilty on all three counts. The trial court imposed an evenly bifurcated five-year sentence on the strangulation charge, and concurrent two-year sentences on the other charges.

¶12    Coleman filed a postconviction motion claiming ineffective assistance by his trial counsel. In the motion, he alleged that counsel was ineffective for failing to (1) impeach S.W. regarding her inconsistent statements relating to Coleman kicking her and pointing a gun at her; (2) move to strike the testimony surrounding these statements as other-acts testimony, after S.W. said they occurred at a different time; and (3) object to alleged improper statements by the prosecutor during closing arguments. Coleman further argued that he was prejudiced due to the cumulative effect of these deficiencies.

¶13    A ***Machner***[2] hearing was held in March 2023, where Coleman's trial counsel testified. The postconviction court found that trial counsel was not deficient as he had adequately impeached S.W. with several prior inconsistent statements. It further observed that it was reasonable, from a strategic standpoint, to choose not to "exploit the gun issue" since that would have been a negative factor against Coleman.

¶14    With regard to the second claim, failing to move to strike S.W.'s testimony as other-acts evidence, the postconviction court found that the testimony was "not technically other[-]acts information." The court pointed to the sidebar

_____

[2] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

where the parties discussed whether the gun and kicking allegations were part of the incident charged, as stated in the police report, or a separate incident. Because of this uncertainty, the postconviction court did not find trial counsel's handling of the situation to be deficient. The court further found that Coleman had not established prejudice relating to either the impeachment claim or the other-acts evidence claim, because these issues would not have "turned the tide" in Coleman's favor.

¶15 Turning to the third claim, regarding counsel's failure to object to the prosecutor's statements during closing arguments, the comments at issue were made in reference to the disorderly conduct charge. The prosecutor discussed the elements of this charge as they related to S.W.'s testimony that she screamed for help during the assault, although no neighbors attempted to help her. The prosecutor then stated, "But if you as jurors are disturbed by what you heard from [S.W.], if you are disturbed that this could happen to a member of our community, then I urge you to find Mr. Coleman guilty of that count as well." The prosecutor continued with this theme during her rebuttal argument, stating, "So he can have her write however many letters he wants, Milwaukee still looks after its own community." Coleman alleged in his postconviction motion that these comments constituted an "improper emotional argument" by "appeal[ing] to societal interests and the justness of the cause" and "introduc[ing] an 'us versus them' mentality."

¶16 The postconviction court did not find trial counsel's failure to object to these comments to be deficient performance. The court noted counsel's testimony at the *Machner* hearing that he generally did not like to interrupt closing arguments, because such objections are more "dramatic" than those made during testimony. However, the court stated that even if it could be construed to be a deficiency, the comments were not sufficient to affect the outcome of the trial.

¶17 Finally, with regard to Coleman's cumulative prejudice argument, the postconviction court rejected this claim. It noted its conclusion that counsel was not deficient for the first two claims, and, regarding the third claim, that the jury was instructed that closing arguments are not evidence. In short, the court found there was no cumulative prejudice because "zero plus zero, plus zero, still equals zero."

¶18 Therefore, the postconviction court denied Coleman's motion. This appeal follows.

¶19 Our analysis of an ineffective assistance of counsel claim involves the familiar two-pronged test: the defendant must show that their trial counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law" which this court reviews independently. *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

¶20 To prove that counsel was constitutionally deficient, the defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. To prove prejudice, the defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The court need not address both prongs of the test if the defendant "cannot make a sufficient showing" on one. *State v. Mayo*, 2007 WI 78, ¶61, 301 Wis. 2d 642, 734 N.W.2d 115.

¶21 In our analysis of whether trial counsel's performance was constitutionally deficient, counsel "enjoys a 'strong presumption'" that their conduct "'falls within the wide range of reasonable professional assistance.'" *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (citation omitted). Indeed, this court "must make 'every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Id.* (citation omitted).

¶22 At the *Machner* hearing, Coleman's trial counsel testified that he could not recall "the specifics" of the trial. However, he did provide a general strategic reason for the conduct that Coleman alleged was deficient; that is, in his opinion, objections brought at certain times can act to "highlight" potentially negative information in the minds of the jurors. Strategic decisions by trial counsel, even those which perhaps may appear "unwise in hindsight," do not constitute ineffective assistance of counsel "so long as they are 'reasonably founded on the facts and law under the circumstances existing at the time the decision was made.'" *State v. Smith*, 2016 WI App 8, ¶14, 366 Wis. 2d 613, 874 N.W.2d 610 (citation omitted).

¶23 Furthermore, even if the alleged omissions constitute deficient performance, Coleman has not established that he was prejudiced by them. "To demonstrate prejudice, the defendant must show that 'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *State v. Pinno*, 2014 WI 74, ¶82, 356 Wis. 2d 106, 850 N.W.2d 207 (citations omitted). In applying this standard, the reviewing court is "instructed to consider the totality of the evidence before the trier of fact." *Johnson*, 153 Wis. 2d at 129-30.

¶24     The errors alleged by Coleman do not rise to such a level of seriousness that would cause us to call into question the reliability of the outcome of the trial, in light of all the evidence presented. With regard to the first claim, trial counsel impeached S.W. on several other inconsistent statements besides those involving the gun and the kicking allegations, such as the visibility of her injuries in the police photos, why she had waited to contact the police about the incident, and her recantation letter that was followed by other written statements regarding the incident. The jury considered S.W.'s answers to these questions, along with the rest of her testimony, and found her to be credible. *See State v. Perkins*, 2004 WI App 213, ¶15, 277 Wis. 2d 243, 689 N.W.2d 684 ("It is the jury's job to resolve any conflicts or inconsistencies in the evidence and to judge the credibility of the evidence[.]").

¶25     Relatedly, S.W.'s testimony regarding the purported other-acts evidence of kicking her and pulling a gun on her was very limited. This was due to trial counsel's objection and his success during the sidebar to end that line of questioning. Thus, the alleged error in failing to move to strike that testimony did not impact the reliability of the proceedings. *See Pinno*, 356 Wis. 2d 106, ¶82.

¶26     Regarding the third claim, counsel's failure to object to alleged improper statements by the prosecutor during the closing arguments, we observe that "counsel should be allowed considerable latitude in closing argument[.]" *State v. Wolff*, 171 Wis. 2d 161, 167, 491 N.W.2d 498 (Ct. App. 1992). In assessing a prosecutor's closing argument, "[t]he line between permissible and impermissible argument is drawn where the prosecutor goes beyond reasoning from the evidence and suggests that the jury should arrive at a verdict by considering factors other than the evidence." *State v. Neuser*, 191 Wis. 2d 131, 136, 528 N.W.2d 49 (Ct. App. 1995). The test in this assessment is whether such remarks "so infected the trial

with unfairness as to make the resulting conviction a denial of due process." ***Wolff***, 171 Wis. 2d at 167 (citations omitted). To make this determination, we examine the challenged arguments "in the context of the entire trial." ***Neuser***, 191 Wis. 2d at 136.

¶27 We are not persuaded that the prosecutor's comments here were so outside the bounds of what is acceptable in a closing argument that they "infected the trial with unfairness." *See* ***Wolff***, 171 Wis. 2d at 167 (citations omitted). Indeed, put in the context of the entire trial, one reasonable inference is that the comments may have been attempting to offset the questions on cross-examination regarding why S.W. did not go to her neighbors for help. Furthermore, the jury was instructed that closing arguments are not evidence, and we presume that jurors follow jury instructions. *See* ***State v. LaCount***, 2008 WI 59, ¶23, 310 Wis. 2d 85, 750 N.W.2d 780. Therefore, the failure to object to these arguments by trial counsel does not make us doubt the reliability of the outcome of the trial. *See* ***Pinno***, 356 Wis. 2d 106, ¶82.

¶28 We also reject Coleman's argument that even if these alleged errors did not cause prejudice individually, he was prejudiced by their cumulative effect. *See* ***State v. Thiel***, 2003 WI 111, ¶63, 264 Wis. 2d 571, 665 N.W.2d 305. When considering the alleged errors together, they are not sufficiently impactful that the reliability of the outcome of Coleman's trial becomes "suspect." *See* ***id.***, ¶81.

¶29 Therefore, Coleman's ineffective assistance of counsel claims fail. *See* ***Mayo***, 301 Wis. 2d 642, ¶61. Accordingly, we affirm his judgment of conviction and the order denying his postconviction motion.

*By the Court.*—Judgment and order affirmed.

10

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2023-24).