COURT OF APPEALS
DECISION
DATED AND FILED

July 23, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1485-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF288

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JOSEPH A. BAILEY,

    DEFENDANT-APPELLANT.

          APPEAL from a judgment of the circuit court for Waukesha County: BRAD SCHIMEL, Judge. *Affirmed*.

          Before Neubauer, Grogan, and Lazar, JJ.

          **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Joseph A. Bailey appeals from a judgment of conviction entered after a jury found him guilty of third-degree sexual assault. He contends that the trial court erred in allowing a police detective to testify about common responses of sexual assault victims. Because the court did not erroneously exercise its discretion in allowing the testimony at issue, we affirm.

## BACKGROUND

¶2     The State charged Bailey with second-degree and third-degree sexual assault, both as a repeater, contrary to WIS. STAT. § 940.225(2)(d) and (3)(a) (2023-24).[1] The charges arose out of sexual contact that occurred between Bailey and the victim in a college dorm room after an evening of socializing. Bailey acknowledged that he had sexual contact with the victim but argued at trial that it had been consensual.

¶3     Before trial, the State filed a notice designating Detective Kenneth Stucker (Stucker) of the Waukesha Police Department as an expert witness. Stucker was designated to testify about the "common responses of a sexual assault victim, including freezing, not fighting back, and not calling out for help" as well as "the common phenomenon of delayed disclosure of a sexual assault, piecemeal disclosures, and reluctance to report to law enforcement." Bailey subsequently moved to exclude Stucker's testimony, arguing among other things that his testimony would not be helpful to the jury, was not "based on sufficient facts and data[,]" and that the State had not established that his testimony was based on a reliable application of "principles and methods" to those facts.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

¶4      The trial court held a hearing on Bailey's motion.  After hearing argument from the parties, the court denied the motion and ruled that Stucker would be permitted to testify.  The court reasoned that Stucker's testimony could be helpful to "jurors who don't know anything about sexual violence other than what they read in the newspaper."  The court stated further that the testimony could correct misconceptions about a sexual assault victim's behavior and assist the jury in evaluating the victim's credibility.  The court also noted its prior experience with Stucker, having previously allowed him "to testify about a similar type of issue" in another case.  The court indicated it would permit Bailey's counsel to question Stucker about his experience outside the jury's presence prior to testifying.

¶5      At trial, the victim, referred to herein by the pseudonym Holly, testified about events on the night in question, her encounter with Bailey in the dorm room, and her reaction to Bailey's conduct.  Holly testified that she went out drinking with friends at a club on the night of the assault.  She felt "tired" and "tipsy" when the group, which included Bailey, left the club and went back to the dorm building where she and a few of her friends lived.  The group decided to sleep in the same room and moved an additional mattress into the room.

¶6      As the group went to bed, Bailey asked Holly to lay next to him on the mattress and "cuddle."  Holly laid down on the mattress, describing it as "completely platonic and innocent."  Some time later, Bailey tried to kiss her, but she "scooched away and … pulled [her] blanket up" to indicate she did not want to have any physical contact with Bailey.  Later, Holly testified, she woke up to find her shorts and underwear pulled down while Bailey touched her stomach, chest, and labia.  Holly could hear him breathing but could not move and felt "frozen at the time."  She "was trying to just stay still because at the time [her]

mind's response to that was just if [she] stay[ed] totally completely still and limp, he will realize that [she was] asleep or … passed out and … unconscious and he will stop." Bailey began to aggressively insert his fingers into her vagina, causing pain, and then inserted his penis into her "a couple of times." Holly testified that she continued to pretend to be asleep, "praying that it would stop." After the assault ended, Holly went to the bathroom and discovered that she was bleeding. She texted her friend to get Bailey to leave and went to the hospital the next day for a sexual assault examination. Three days later, Holly contacted the police about the assault.

¶7 Stucker testified after Holly. He testified about his 10 years' experience as a detective, including 8 in the sensitive crimes unit, during which he had investigated approximately "600 to 1,000" sexual assaults. Stucker estimated that he meets with or observes interviews of "30 to 40" sexual assault victims per month. He also testified that he has received training annually on "how to handle a victim" and "different mindsets of a victim." Stucker agreed that it is "important for [him] in [his] work to understand … common responses of a [sexual assault] victim."

¶8 He described the "fight, flight or freeze" response that victims experience when their "brain[s] start[] to react to the stress" of an assault and "go[] into survival mode." Stucker testified that "[s]tudies show [that] … over 90 percent of … [sexual assault] victims freeze." He agreed that this "overwhelmingly common" response was consistent with his personal "experience in speaking with sexual assault victims." Stucker also testified that victims often delay reporting assaults to law enforcement for a variety of reasons, including fear of their assailant, fear of being blamed, and fear that they will not be believed. In

his experience, the four-day period between the assault in this case and Holly's report to law enforcement was "[a]bsolutely not" unusual.

¶9     On cross-examination, Stucker admitted he could not identify "the exact name[s] of" any studies on sexual assault that he has read but noted he had a "binder" of studies about victims at the police department. With respect to the "flight, fight or freeze" responses, Stucker also testified that he has not "see[n] a lot of fight in a lot of" the victims he encountered. He also confirmed that the flight response is rare among victims. In contrast to these rarely observed behaviors, Stucker testified that the majority of victims in his cases had frozen and had not verbally or physically resisted. The jury found Bailey guilty of third-degree sexual assault but acquitted him of second-degree sexual assault.

## DISCUSSION

¶10     On appeal, Bailey contends that the trial court erred in allowing Stucker to testify about common sexual assault victim behaviors for two reasons. First, Bailey argues that the trial court did not apply the correct legal standard because in its oral ruling, it did not address the requirement that expert testimony be reliable. *See **Kenyon v. Kenyon***, 2004 WI 147, ¶10, 277 Wis. 2d 47, 690 N.W.2d 251 (court erroneously exercises its "discretion when it fails to consider relevant factors" or "makes an error of law" (citation omitted)). Second, he contends that "Stucker's testimony was not based on reliable facts or data." We disagree on both points.

¶11     The admissibility of expert testimony is governed by WIS. STAT. § 907.02(1), which provides that such testimony is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" and "the testimony is based upon

sufficient facts or data, … the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case." We "review a [trial] court's decision to admit or exclude expert testimony under an erroneous exercise of discretion standard." *State v. Giese*, 2014 WI App 92, ¶16, 356 Wis. 2d 796, 854 N.W.2d 687. "This standard is highly deferential" and requires us to uphold a ruling "even where we disagree with it, so long as appropriate discretion was exercised." *State v. Hogan*, 2021 WI App 24, ¶26, 397 Wis. 2d 171, 959 N.W.2d 658. A trial court appropriately exercises discretion where it applies the correct law to the relevant facts and provides a reasoned explanation for its decision. *Id.*

¶12 A trial court has "considerable leeway in deciding in a particular case how to go about determining whether … expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). We have recognized that in some cases, "personal knowledge and experience may form the basis for expert testimony." *Hogan*, 397 Wis. 2d 171, ¶25; *see also State v. Smith*, 2016 WI App 8, ¶7, 366 Wis. 2d 613, 874 N.W.2d 610 ("Reliability may be based on the expert's own observations from his or her 'extensive and specialized experience.'" (quoting *Kumho Tire*, 526 U.S. at 156)). In such cases, the expert's methodology "may be nothing more than rigorous participation in ... various activities, trainings, and experiences available to that individual." *Hogan*, 397 Wis. 2d 171, ¶30. To assess reliability in such cases, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Seifert v. Balink*, 2017 WI 2, ¶73, 372 Wis. 2d 525, 888 N.W.2d 816 (citation omitted).

¶13 Stucker's testimony is akin to the "experience-based" testimony that we concluded was properly admitted in *Smith*, 366 Wis. 2d 613, ¶10 (social worker testimony about common behaviors in child abuse victims) and *Hogan*, 397 Wis. 2d 171, ¶¶27-34 (police detective testimony about methods of human trafficking). The record shows that Stucker had 17 years of experience in law enforcement, the last 8 of which were spent investigating sensitive crimes. During those years, Stucker investigated hundreds of sexual assault complaints, interacted with victims dozens of times per month, reviewed literature about victim behavior, and received annual training in working with victims and understanding their mental states. These aspects of his professional experience constituted the methodology he used "to reach … generalized conclusion[s] about common behavior[s]" of assault victims with which Holly's behavior during and after the assault was consistent. *See id.*, ¶30. Stucker's years of experience investigating sexual assaults gave him "specialized knowledge" about victim behavior that helped the jury understand Holly's testimony, evaluate her credibility, and determine the central fact in dispute at the trial—whether she had consented to sexual contact with Bailey. *See* WIS. STAT. § 907.02(1). Stucker's experience-based testimony was sufficiently reliable.

¶14 As to the trial court's pretrial ruling, though the court focused on whether Stucker's testimony would be helpful to the jury, we agree with the State that the court did not ignore the reliability requirement entirely. The court was familiar with Stucker's testimony, having allowed it in a previous case. Moreover, the court had before it the State's opposition to Bailey's motion, which set forth Stucker's qualifications to testify about victim behaviors and explained the methodology Stucker used to acquire knowledge of the behaviors about which he was to testify. Though the court's reasons for concluding that Stucker's testimony

was admissible could have been more fulsomely stated, we are obliged to look for reasons to sustain its decision given our standard of review. *See **Hogan***, 397 Wis. 2d 171, ¶26. Here, the record contains sufficient evidence concerning Stucker's experience, which was the basis for the court's reliability determination. The circuit court did not erroneously exercise its discretion in denying Bailey's motion to exclude it.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5