STATE of Wisconsin, Plaintiff-Respondent,

v.

Ryan H. TENTONI, Defendant-Appellant.†

Court of Appeals

*No. 2014AP2387–CR. Submitted on briefs June 11, 2015.
—Decided September 9, 2015.*

2015 WI App 77

(Also reported in 871 N.W.2d 285.)

† Petition for Review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Craig S. Powell* and *Geoffrey R. Misfeldt* of *Kohler & Hart*, SC, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sarah L. Burgundy*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶ 1. NEUBAUER, C.J. Ryan Tentoni asserts a privacy interest in text messages sent by him and discovered through a warrantless search of Wayne Wilson's phone. Tentoni seeks suppression of the text messages and other subsequently obtained phone records as fruit of the government's illegal search of his text messages stored in Wilson's phone. Tentoni does not have an objectively reasonable expectation of privacy as he relinquished any claim to privacy in the text messages delivered to Wilson's phone. We affirm.

## BACKGROUND

¶ 2. At the preliminary hearing, Delafield police officer Landon Nyren testified that on December 5, 2012, he responded to a call about a death and found the body of Wayne Wilson. Wilson had a small plastic object in his mouth, which turned out to be a fentanyl patch. The Waukesha County Medical Examiner testified that fentanyl was a substantial factor in Wilson's death and was the immediate cause of his death. On the autopsy report, the examiner listed acute fentanyl intoxication as the cause of death.

¶ 3. Nyren testified that, while at Wilson's residence, he found Wilson's phone and retrieved text messages from it, including texts sent and received the

day before Wilson's death. There were messages between Wilson and Tentoni discussing Tentoni obtaining fentanyl patches for Wilson. After Wilson sent Tentoni a message indicating that the some patches "are like duds to me" and that he did not "feel a thing," there was a text from Tentoni to Wilson suggesting that Wilson suck on a patch. A subsequent message from Tentoni to Wilson described how to fold the patch, and Nyren testified that the folding method described in the text was consistent with the position of the patch on Wilson's body when he was found.

¶ 4. Tentoni's counsel represented to the court, at the hearing on his motion to suppress, that, relying on the information contained in the text messages on Wilson's phone from Tentoni, Nyren obtained a warrant for Tentoni's phone records relating to the number he used to text Wilson, including 350 text messages between Tentoni and Wilson in the month of November and into the first week of December and around four thousand text messages in all.[1]

¶ 5. Tentoni moved to suppress the text messages found on Wilson's phone and those obtained with the warrant. The circuit court denied the motion, finding that Tentoni had not made a showing of a reasonable expectation of privacy in information that he sent to Wilson. Tentoni pleaded guilty to an amended charge of second-degree reckless homicide, was convicted, and now appeals.

---

[1] The search warrant and resulting phone records are not in the record on appeal. The State conceded at the motion hearing that text messages found on Wilson's phone at the death scene led the investigating officer to Tentoni and subsequently to obtain a search warrant for Tentoni's phone records.

## DISCUSSION

### Standard of Review

¶ 6. On review of a circuit court's decision on a motion to suppress, we uphold the circuit court's findings of fact unless they are clearly erroneous. *See State v. Richardson*, 156 Wis. 2d 128, 137, 456 N.W.2d 830 (1990). Whether these facts demonstrate that constitutional principles have been complied with is a question of law we review de novo. *Id.* at 137–38.

### Reasonable Expectation of Privacy

¶ 7. "The Fourth Amendment provides that 'people [are] to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . and [that] no Warrants shall issue, but upon probable cause . . . .' " *State v. Martwick*, 2000 WI 5, ¶ 26, 231 Wis. 2d 801, 604 N.W.2d 552 (quoting U.S. Const. amend. IV; alteration in original); *see also* Wis. Const. art. 1, § 11.[2] Fourth Amendment rights are personal and may not be asserted vicariously. *State v. Bruski*, 2007 WI 25, ¶ 22 n.3, 299 Wis. 2d 177, 727 N.W.2d 503 (citing *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978)). In order to have standing to challenge a search on Fourth Amendment grounds, a defendant must have "a legitimate expectation of privacy" in the

---

[2] The Wisconsin Supreme Court "generally follows the United States Supreme Court's interpretation of the search and seizure provision of the Fourth Amendment in construing Article I, Section 11 of the Wisconsin Constitution." *State v. Bruski*, 2007 WI 25, ¶ 20 n.1, 299 Wis. 2d 177, 727 N.W.2d 503.

area or items subjected to a search. *See State v. Trecroci,* 2001 WI App 126, ¶ 26, 246 Wis. 2d 261, 630 N.W.2d 555.[3] The defendant bears the burden of showing, by a preponderance of the evidence, that he or she had a reasonable expectation of privacy. *Id.,* ¶ 35. The defendant must show two things: (1) that he or she had an actual, subjective expectation of privacy in the area searched and item seized and (2) that society is willing to recognize the defendant's expectation of privacy as reasonable. *Id.* With regard to the second, objective, prong, the *Trecroci* court set forth six factors relevant to the determination of whether a person has a recognizable, reasonable expectation of privacy:

1. Whether the person had a property interest in the premises;

2. Whether the person was legitimately on the premises;

3. Whether the person had complete dominion and control and the right to exclude others;

4. Whether the person took precautions customarily taken by those seeking privacy;

5. Whether the person put the property to some private use; and

6. Whether the claim of privacy is consistent with historical notions of privacy.

---

[3] Although *State v. Trecroci,* 2001 WI App 126, 246 Wis. 2d 261, 630 N.W.2d 555, was about a reasonable expectation of privacy in a place, and Tentoni argues that he had a reasonable expectation of privacy in the content of the text conversations stored as messages in Wilson's phone, not in the phone per se, this distinction does not negate the applicability of *Trecroci,* which provides guidance on whether Tentoni had a reasonable expectation of privacy. Tentoni concedes that there is no analogous list of privacy factors tailored to text messages.

*Id.*, ¶ 36. These factors are not controlling, and the list is not exclusive. *State v. Guard*, 2012 WI App 8, ¶ 17, 338 Wis. 2d 385, 808 N.W.2d 718 (2011). Whether an individual has a reasonable expectation of privacy is determined by examining the totality of the circumstances. *Id.*

■

¶ 8. Addressing the factors applicable to this case, we conclude that under the totality of circumstances Tentoni did not have an objectively reasonable expectation of privacy in text messages contained in Wilson's phone.[4] First, Tentoni had no property interest in Wilson's phone. Second, Tentoni had no control over Wilson's phone or any right to exclude others from text messages he had sent to Wilson and which were stored in Wilson's phone. Tentoni had no control over what Wilson did with Tentoni's text messages. Third, Tentoni did not claim that he took any steps to enhance the privacy of his text messages to Wilson or that he ever told Wilson to keep those messages private. *See State v. Duchow*, 2008 WI 57, ¶ 33, 310 Wis. 2d 1, 749 N.W.2d 913 (no expectation of privacy in oral statement when made in public place because the speaker assumed the risk of disclosure to others); *Bruski*, 299 Wis. 2d 177, ¶¶ 27–29 (no legitimate expectation of privacy in vehicle in which the defendant had no property interest, took no precautions to secure privacy and lacked the right to exclude others).

¶ 9. Looking to other jurisdictions, it is widely accepted that the sender of a letter has no privacy

---

[4] Because the second part of the test, i.e., whether the asserted expectation of privacy was objectively reasonable, is dispositive, we need not address whether Tentoni had a subjective expectation of privacy in the text messages.

interest in the contents of that letter once it reaches the recipient. *See United States v. Dunning*, 312 F.3d 528, 531 (1st Cir. 2002); WAYNE R. LAFAVE, 6 SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 11.3(f), at 293–95 & n.441 (5th ed. 2012) ("The standing of the sender, to the extent it is based solely upon the fact of his being the sender, terminates once delivery of the goods has been made."). The same analysis has been applied to e-mails and texts. *See Guest v. Leis*, 255 F.3d 325, 333 (6th Cir. 2001) (noting that a computer user "would lose a legitimate expectation of privacy in an e-mail that had already reached its recipient; at this moment, the e-mailer would be analogous to a letter-writer, whose 'expectation of privacy ordinarily terminates upon delivery' of the letter") (citation omitted); *State v. Patino*, 93 A.3d 40, 56 (R.I. 2014) ("Because the recipient now shares full control of whether to share or disseminate the sender's message, the sender, to be sure, no longer enjoys a reasonable expectation of privacy in the digital copy of the message contained on the recipient's device."); *see also United States v. Jones*, 149 F. App'x 954, 959 (11th Cir. 2005) (defendant did not have reasonable expectation of privacy in text messages contained in his coconspirator's pager); *Fetsch v. City of Roseburg*, No. 6:11–cv-6343–TC, 2012 WL 6742665, at *10 (D. Or. Dec. 31, 2012) (no reasonable expectation of privacy in text messages displayed on third party's phone); *Hampton v. State*, 763 S.E.2d 467, 471 (Ga. 2014) (no reasonable expectation of privacy in text messages where defendant could not show that phone belonged to him); *State v. Griffin*, 834 N.W.2d 688, 696–97 (Minn. 2013) (defendant did not have reasonable expectation of privacy in cell phone records because he was not the subscriber);

*State v. Carle*, 337 P.3d 904, 910–11 (Or. Ct. App. 2014) (defendant did not have reasonable expectation of privacy in text messages sent to someone else's cell phone).[5]

¶ 10. *Patino* is on all fours with our case, setting forth a comprehensive and persuasive expectation of privacy analysis consistent with that applied in Wisconsin cases. Patino had sent text messages to his girlfriend, some of which were inculpatory regarding the death of her son. *Patino*, 93 A.3d at 42, 45. The court noted that the most important factor in deter-

_____

[5] Tentoni is correct that courts have recognized an expectation of privacy in text messages on a cell phone—an expectation that belongs to the owner or user of the phone. *See, e.g., Riley v. California*, 134 S. Ct. 2473, 2495 (2014) (holding that law enforcement generally must obtain a warrant to search digital information on a cell phone seized incident to arrest). *Riley* does not help Tentoni, however, because there the defendants themselves, owners of the cell phones that were searched, challenged the searches. *Id.* at 2480–81. This is true about all of Tentoni's cited cases—the person who had the phone was the owner, the exclusive user, or a permissive user in possession of the phone. *See City of Ontario v. Quon*, 560 U.S. 746, 760, 764–65 (2010) (assuming, arguendo, that employee had a reasonable expectation of privacy in pager issued to him by employer, employer's work-related search was still reasonable); *United States v. Finley*, 477 F.3d 250, 254 (5th Cir. 2007) (the phone found on Finley was issued to him by his employer but he was allowed to use it for personal purposes); *State v. Bone*, 107 So. 3d 49, 66 (La. Ct. App. 2012) (exclusive user of cell phone had reasonable expectation of privacy in contents); *State v. Clampitt*, 364 S.W.3d 605, 611 (Mo. Ct. App. 2012) (cell phone subscriber has reasonable expectation of privacy in content of text messages); *State v. Smith*, 920 N.E.2d 949, 950, 954–55 (Ohio 2009) (defendant had reasonable expectation of privacy in his cell phone's contents). Tentoni provides no specific authority in support of his ability to claim a privacy right to text messages found on another's phone.

mining whether a person has a reasonable expectation of privacy in text messages is from whose phone the messages are accessed. "Underlying this consideration is the element of control; that is to say, when the recipient receives the message, the sender relinquishes control over what becomes of that message on the recipient's phone." *Id.* at 55. Because the text messages were found on the girlfriend's phone, and she had full control over whether to share or disseminate the sender's text messages, Patino "did not have an objectively reasonable expectation of privacy in any text messages contained in [the girlfriend's] phone, whether sent by defendant, sent to defendant, or otherwise." *Id.* at 57.

¶ 11. Here, Tentoni neither exerted nor maintained any control over Wilson's phone or the copies of text messages that he had sent to Wilson and were stored in Wilson's phone. Tentoni presented no evidence that he could access the copies of the texts he sent to Wilson or control the content of Wilson's phone in any way. Once Tentoni sent the messages to Wilson and Wilson received them, Tentoni had no control over whether Wilson saved them, deleted them, forwarded them to others or shared their content in any way. This lack of control over the message once it reaches the recipient is analogous to the lack of control a sender has over a piece of mail or e-mail once it reaches the recipient, where it may be saved, destroyed or deleted, shared, or disclosed to others. This lack of control over what is done with the text message and lack of any right to exclude others from reading it are key in the determination that Tentoni did not have an objectively reasonable expectation of privacy in the text messages stored in Wilson's phone.

¶ 12. Tentoni had no reasonable expectation of privacy in the text messages stored in Wilson's cell phone. We uphold the circuit court's decision on the motion to suppress and affirm the conviction.[6]

*By the Court.*—Judgment affirmed.

---

[6] Regarding Tentoni's citation of the Wisconsin Electronic Surveillance Control Law, Wis. Stat. §§ 968.27–968.375 (2013–14), as an indication of a legislative intent to protect text messages, Tentoni did not raise this argument below, nor does he develop any argument that the law applies here or gives rise to a reasonable expectation of privacy in text messages on another's phone. We need not address his argument. *Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W.2d 140 (1980) (appellate court need not consider issue raised the first time on appeal); *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not address undeveloped arguments).