COURT OF APPEALS
DECISION
DATED AND FILED

February 4, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP952-CR**

Cir. Ct. No. 2021CF847

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JOSE A. HERNANDEZ DIAZ,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waukesha County: BRAD SCHIMEL and LLOYD V. CARTER, Judges. *Affirmed*.

Before Neubauer, P.J., Gundrum, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Jose A. Hernandez Diaz appeals from a judgment convicting him of five counts of second-degree sexual assault of an unconscious victim and ten counts of possession of an intimate representation of a person without consent and from an order denying his motion for postconviction relief.[1] Diaz takes issue with the trial court's denial of his motion to suppress and its allowance at trial of expert testimony from a police detective based on the detective's training and experience.  Diaz also argues that the postconviction court should have held an evidentiary hearing on his motion asserting ineffective assistance of trial counsel for failure to object to the court's remarks at sentencing. For the reasons that follow, we disagree with Diaz's claims of error and affirm.

### BACKGROUND

¶2    Diaz left a bag in a Pewaukee hotel room after checking out.  For the next two days, hotel staff kept the bag in safekeeping and tried to contact Diaz. When Diaz did not respond, hotel staff turned the bag over to law enforcement who opened it and found sex toys, several secure digital memory cards (SD cards), and a camera.  The SD cards contained a large collection of self-produced pornographic videos and photographs.  Among these were several videos of an incident showing a man, later identified as Diaz, engaging in multiple acts of anal and vaginal intercourse with a woman who appeared to be unconscious.

¶3    Using facial recognition software, police identified and located the woman in the video.  The woman said that she was unaware of and had not consented to the sexual activity depicted in the video.

---

[1] The Honorable Brad Schimel presided over Diaz's jury trial and sentencing hearing. The Honorable Lloyd V. Carter presided over Diaz's postconviction proceedings.

¶4      Diaz was charged with multiple counts of sexual assault and of capturing an intimate image without consent.  Diaz filed a motion to suppress evidence obtained as a result of the warrantless search of the bag and its contents.  The trial court held a hearing on the motion.  Both the sheriff's deputy who responded to the hotel and initially opened the bag and the detective who reviewed the contents of the SD cards testified.  At the conclusion of the testimony, the court issued an oral ruling denying the motion.  It concluded that the search did not implicate the Fourth Amendment because the bag was abandoned; thus, Diaz had no expectation of privacy in its contents at the time.

¶5      Diaz also filed a motion to preclude the detective who examined the digital recordings and images on the SD cards from offering expert testimony regarding unconscious persons based on the detective's training and experience.  The trial court denied the motion in an oral ruling.  It determined that the testimony the State intended to offer based on the detective's training and experience with unconscious or deceased persons was admissible.

¶6      During a three-day jury trial, videos showing the sexual assaults were played for the jury.  The videos depicted Diaz committing acts of vaginal and anal intercourse with a non-responsive woman.  The woman depicted in the videos testified that she did not give Diaz prior consent to have intercourse with her in the event she became unconscious.  The investigating detective and other law enforcement officers testified regarding the contents of the bag and other aspects of the offenses.  The jury found Diaz guilty of all 15 counts charged in the information.

¶7      The sentencing court imposed 15 years of initial confinement and 15 years of extended supervision.  The sentence consisted of concurrent sentences on

each count of second-degree sexual assault of 15 years of confinement and 15 years of supervision. The court also imposed sentences of one and one-half years of confinement and one and one-half years of supervision on each count of capturing an intimate representation without consent, to be served consecutive to each other but concurrent with the sentences on the second-degree sexual assault counts.

¶8 Diaz filed a postconviction motion alleging multiple potential issues, including whether the trial court erred in denying his motion to suppress and allowing the detective's expert testimony and whether the sentencing court considered improper factors or inaccurate information. The postconviction court denied the motion without an evidentiary hearing. The court concluded that the record did not support Diaz's claims. Diaz appeals.

¶9 We include additional facts as necessary to our discussion below.

## DISCUSSION

### I. Diaz's suppression motion

¶10 Diaz first argues the trial court erred in denying his motion to suppress evidence found in the bag he left when he checked out of the hotel. The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. *State v. Young*, 2006 WI 98, ¶18, 294 Wis. 2d 1, 717 N.W.2d 729. This protection, however, extends only to areas in which there is a reasonable expectation of privacy. *State v. Guard*, 2012 WI App 8, ¶16, 338 Wis. 2d 385, 808 N.W.2d 718. Therefore, to challenge a search on Fourth Amendment grounds, a defendant must first show two things by a preponderance of the evidence: "(1) that he or she had an actual, subjective expectation of privacy

4

in the area searched and item seized and (2) that society is willing to recognize the defendant's expectation of privacy as reasonable." *State v. Tentoni*, 2015 WI App 77, ¶7, 365 Wis. 2d 211, 871 N.W.2d 285.

¶11     Here, we focus on the second prong of the test—that is, whether Diaz had an objectively reasonable expectation of privacy in a bag that he left behind at a hotel for two days after he checked out. The following non-exclusive factors are relevant to the objective reasonableness inquiry:

> (1) whether the defendant had a property interest in the premises; (2) whether he [or she] was legitimately (lawfully) on the premises; (3) whether he [or she] had complete dominion and control and the right to exclude others; (4) whether he [or she] took precautions customarily taken by those seeking privacy; (5) whether he [or she] put the property to some private use; and (6) whether the claim of privacy is consistent with historical notions of privacy.

*State v. Dumstrey*, 2016 WI 3, ¶47, 366 Wis. 2d 64, 873 N.W.2d 502 (citation omitted). Although these factors guide our analysis, they are not controlling. *Tentoni*, 365 Wis. 2d 211, ¶7. We consider the totality of the circumstances in determining whether an individual has a reasonable expectation of privacy. *Id.*

¶12     We review the trial court's denial of Diaz's motion to suppress under a two-step inquiry. *See State v. Lonkoski*, 2013 WI 30, ¶21, 346 Wis. 2d 523, 828 N.W.2d 552. First, we uphold the court's findings of fact unless they are clearly erroneous. *Id.* Second, we independently apply constitutional principles to those facts. *Id.* The question of whether a Fourth Amendment search has occurred—which, as stated above, Diaz bears the burden to show by a preponderance of the evidence—is a question of law that we review independently. *See Guard*, 338 Wis. 2d 385, ¶14.

¶13   After considering the factors applicable to this case, we agree with the State that Diaz did not have an objectively reasonable expectation of privacy in a bag that he left in a rented hotel room for two days after he checked out of the room. Diaz had no ownership or other property interest in the Pewaukee hotel or its rooms, and once he checked out of the hotel and left his bag in a room there, Diaz did not have any dominion or control over the bag. Diaz could not prevent anyone, including law enforcement, from accessing the bag and viewing its contents, which supported the issuance of a search warrant for the electronic files and devices after he abandoned it at the hotel.

¶14   In further support of our conclusion, we note that a defendant does not have an expectation of privacy in abandoned property. *See Abel v. United States*, 362 U.S. 217, 241 (1960); *see also United States v. Basinski*, 226 F.3d 829, 836 (7th Cir. 2000). In *Abel*, the defendant was arrested in his hotel room. *Abel*, 362 U.S. at 241. He packed up his effects and checked out of the hotel, but he left some items behind in the room's wastebasket. *Id.* The Supreme Court concluded that the officers' search of the room after Abel checked out, which uncovered incriminating items that he left in the wastebasket, was lawful because "at the time of the search [Abel] had vacated the room." *Id.* The court went on to hold that, once Abel checked out of the hotel room, "[t]he hotel then had the exclusive right to its possession, and the hotel management freely gave its consent that the search be made." *Id. See also*, *United States v. Rahme*, 813 F.2d 31 (2d Cir. 1987) (holding "when a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any articles therein of which the hotel lawfully takes possession").

¶15    Similarly, Diaz cannot show that he had a reasonable expectation of privacy in the bag that he left in his hotel room after the rental period expired. Diaz, like *Abel*, no longer had a reasonable expectation of privacy in the bag once he left it in the hotel room at the conclusion of the rental period. Of importance here is that the detective applied for and obtained a search warrant for the items found within the bag after efforts by police to ascertain the bag's owner produced evidence of what he believed to be a crime and Diaz makes no argument that we should conclude the warrants were unlawful unless the bag was unlawfully searched. Accordingly, we conclude that the trial court did not err in denying Diaz's motion to suppress the evidence from the bag and the fruits of the related warrant searches.

## II.    Expert testimony based on training and experience

¶16    Diaz next argues that the trial court erroneously exercised its discretion in allowing the investigating detective on Diaz's case to offer expert testimony at trial, based on the detective's training and experience, that the victim in Diaz's video appears to be unconscious throughout the sexual assaults. The admissibility of expert testimony is governed by WIS. STAT. § 907.02(1) (2023-24),[2] which provides that such testimony is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" and "the testimony is based upon sufficient facts or data, ... the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case."

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

¶17     In this case, the detective who investigated Diaz's offenses testified at the hearing on the suppression motion.  He stated that the woman in the video that led to the sexual assault charges "appeared to be unconscious."  The detective based his conclusion in part on his professional "experience [of] having to move people who are unconscious or having to move people deceased," explaining that the woman in the video "appeared similar in fashion where they don't … protect themselves or react to being moved around."

¶18     The detective further testified as to his experience regarding how the bodies of unconscious persons and persons pretending to be unconscious respond to stimuli, with the former having no reaction and the latter having automatic reactions that they are not able to control or suppress.  The detective noted that the woman in the video is "completely prone or supine in the bed the entire time," and observed that she never speaks or sits up.  The detective further remarked that "[Diaz] is … moving [the victim's] limbs to reposition her body," yet "[the victim] does not react to being moved."  Finally, the detective testified that the victim's "body movements appear consistent with what I have personally experienced with moving an unconscious body or a deceased person where the limbs just kind of flop over."

¶19     After the detective testified at the suppression hearing, Diaz filed a motion to preclude the State from offering the same expert testimony at trial about unconscious persons.   Diaz argued that such evidence would not meet the standards for admissibility of expert testimony under WIS. STAT. § 907.02 or ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579 (1993).  The trial court denied Diaz's motion to preclude the detective's expert testimony, correctly explaining that expert testimony is not limited to evidence based strictly on scientific knowledge.   The court noted the detective's "ten years of law

enforcement [experience]" and found that the detective's experience in dealing with deceased and unconscious people in a professional capacity would assist the jury in deciding whether the State proved an element of second-degree sexual assault of an unconscious person.

¶20 We "review a [trial] court's decision to admit or exclude expert testimony under an erroneous exercise of discretion standard." *State v. Giese*, 2014 WI App 92, ¶16, 356 Wis. 2d 796, 854 N.W.2d 687. "This standard is highly deferential," requiring us to uphold a ruling "even where we disagree with it, so long as appropriate discretion was exercised." *State v. Hogan*, 2021 WI App 24, ¶26, 397 Wis. 2d 171, 959 N.W.2d 658. A trial court appropriately exercises discretion where it applies the correct law to the relevant facts and provides a reasoned explanation for its decision. *Id.*

¶21 A trial court has "considerable leeway in deciding in a particular case how to go about determining whether ... expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). We have recognized that "personal knowledge and experience may form the basis for expert testimony." *Hogan*, 397 Wis. 2d 171, ¶25; *see also State v. Smith*, 2016 WI App 8, ¶7, 366 Wis. 2d 613, 874 N.W.2d 610 ("Reliability may be based on the expert's own observations from his or her 'extensive and specialized experience.'" (quoting *Kumho Tire*, 526 U.S. at 156)). In such cases, the expert's methodology "may be nothing more than rigorous participation in ... various activities, trainings, and experiences available to that individual." *Hogan*, 397 Wis. 2d 171, ¶30. To assess reliability in such cases, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Seifert v. Balink*, 2017 WI 2, ¶73, 372 Wis. 2d 525, 888 N.W.2d 816 (citation omitted).

¶22    The trial court did not erroneously exercise its discretion in admitting the detective's testimony. The testimony offered here is similar to the "experience-based" testimony that we concluded was properly admitted in *Smith*, 366 Wis. 2d 613, ¶10 (social worker testimony about common behaviors in child abuse victims) and *Hogan*, 397 Wis. 2d 171, ¶¶27-34 (police detective testimony about methods of human trafficking). As the trial court found important, the detective had 10 years of experience in law enforcement. During those years, he testified that he had extensive experience in dealing with unconscious and deceased individuals. These aspects of his professional experience constituted the methodology he used "to reach ... generalized conclusion[s] about common behavior[s]" of unconscious persons with which the woman's behavior during and after the assault depicted in the video was consistent. *See id.*, ¶30.

¶23    As the trial court found, the detective's years of experience dealing with unconscious and deceased persons gave him "specialized knowledge" about the behavior of unconscious persons that helped the jury understand the video and the woman's testimony, evaluate her credibility, and determine a central fact in dispute at the trial—whether she was unconscious in the video depicting sexual contact with Diaz. *See* WIS. STAT. § 907.02(1). We conclude, as did the trial court, that the detective's experience-based testimony was sufficiently reliable and, as such, the court did not erroneously permit it at trial.

### III.    Diaz's postconviction motion alleging improper sentencing factors

¶24    Diaz first argues that the sentencing court relied on inaccurate information and improper factors, including by determining that Diaz's conduct of paying women to record them, posing them, and sometimes engaging in consensual sex acts with Diaz was "immoral," even if technically legal. Because

trial counsel did not object to the court's remarks at sentencing, Diaz next argues that counsel rendered ineffective assistance. Finally, Diaz argues that because his postconviction motion presented sufficient facts demonstrating his entitlement to relief, the court erred in denying his motion without an evidentiary hearing.

¶25 "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. To prevail on a claim for resentencing based on inaccurate information, a defendant must show, by clear and convincing evidence, that: (1) there was inaccurate information before the court at sentencing, and (2) the court actually relied on the inaccurate information when imposing the defendant's sentence. *State v. Coffee*, 2020 WI 1, ¶38, 389 Wis. 2d 627, 937 N.W.2d 579.

¶26 In this case, Diaz sought an evidentiary hearing to explore his assertion that trial counsel rendered ineffective assistance in failing to object to the sentencing court's purported reliance on inaccurate information. To prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, the defendant must point to specific acts or omissions by counsel that are "outside the wide range of professionally competent assistance." *Id.* at 690. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If a defendant fails to make a sufficient showing on one prong of the *Strickland* test, we need not address the other. *Id.* at 697.

11

¶27    A defendant is not automatically entitled to an evidentiary hearing on his or her postconviction motion. *State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996). The postconviction court must hold an evidentiary hearing only if the defendant alleges "sufficient material facts that, if true, would entitle the defendant to relief," which is a question of law that we review de novo. *State v. Allen*, 2004 WI 106, ¶¶9, 14, 274 Wis. 2d 568, 682 N.W.2d 433. To entitle the defendant to a hearing, the motion must "allege the five 'w's' and one 'h'; that is, who, what, where, when, why, and how" as to the defendant's claims. *Id.*, ¶23. If the motion does not set forth sufficient facts or presents only conclusory allegations, or the record establishes conclusively that the defendant is not entitled to relief, the circuit court may grant or deny a hearing at its discretion. *Id.*, ¶9.

¶28    Considering the arguments of the parties and the evidence in the record, we conclude that Diaz failed to allege sufficient facts in the postconviction motion to entitle him to an evidentiary hearing; accordingly, the postconviction court did not err in denying his motion without a hearing. The record is clear that the sentencing court considered the proper factors and appropriate information and, contrary to Diaz's assertions, did not rely on inaccurate or unlawful considerations. Thus, Diaz has not alleged any facts that entitle him to the relief he seeks.

¶29    Applying the appropriate factors to the facts, the sentencing court addressed Diaz: "[A]s I look at your character and rehabilitative needs, there are sex offender rehabilitative needs that are glaring." The court acknowledged that "there is [a] lot about [Diaz's] character that is good[,]" but his "nasty, evil behavior" "th[at] night undoes all of those ... things." It stressed that the need to protect the community from Diaz "is strong. Because … [he] became so accustomed to doing this that [he] didn't pay attention that [he] left a duffel bag …

12

[and] didn't pay attention anymore.  That is - - that is a person that is dangerous to the community."

¶30    The sentencing court further reasoned that the offense was "wildly serious to have invaded [the victim's] bodily security and to just disregard her dignity.  That is very severe."  The court also stressed that Diaz appeared to have "no remorse whatsoever" and imposed a global sentence of 15 years of initial confinement and 15 years of extended supervision.  Based on our review, we conclude that Diaz has not shown by clear and convincing evidence that the sentencing court actually relied on inaccurate information or considered any improper factor.  *See* ***Tiepelman***, 291 Wis. 2d 179, ¶¶2, 26; *see also* ***State v. Harris***, 2010 WI 79, ¶¶34-35, 326 Wis. 2d 685, 786 N.W.2d 409.

¶31    To explain, Diaz first argues the sentencing court's statement that the woman in the video likely anticipated sexual activity and cameras when meeting Diaz but did not anticipate "that somehow she was going to end up induced into a practically comatose state and have things done to her without her knowledge, awareness[,] or consent[,]" demonstrates the court's reliance on inaccurate information.  Diaz asserts that the statement indicates that the court treated as fact that Diaz drugged the woman, which Diaz claims is inaccurate information.  However, Diaz fails to persuade us that the court's alleged inaccurate assumption that Diaz drugged the woman in any way impacted his sentence.

¶32    First, the court explicitly rejected the notion that it could find that Diaz drugged the woman in the video.  It plainly stated: "I don't know if she was drugged or what the circumstances were" and "[t]here is no way for us to go back and try to prove anything about a drugged condition."  The court's statements directly contradict Diaz's conclusory argument.  Additionally, Diaz presents no

clear or convincing evidence that the court put any weight on the circumstances surrounding how the woman got into the unconscious condition. As noted, the court's concerns were reflected in the remarks recited above, and Diaz does not persuade us that the sentence indicates that the court acted under any misconceptions.

¶33 Diaz next argues that the sentencing court relied on an improper factor—the court's personal moral beliefs. In support of this argument, Diaz cites the court's statement that Diaz's conduct of paying women to meet him in hotel rooms to film and sometimes engage in sex acts with them "might not be a sexual assault but [is] profoundly immoral." However, this statement must be considered in context, which the record shows is one of concern for the safety of the community. To explain, the court said that the frequency with which Diaz engaged in this seemingly legal behavior, which led him to be careless, was "not characteristic of a moral person" or one "that [the judge would] feel comfortable walking around the streets with." Though Diaz maintains that these comments show the court relied on an improper factor; namely, its own personal moral judgment of Diaz's legal conduct, we disagree.

¶34 As the State argues on appeal and the postconviction court noted, the sentencing court appeared to recognize that not all of the conduct outside of the videotaped assaults was necessarily legal. The court observed that some of it may have constituted soliciting prostitution, which is defined as an unlawful and immoral offense in Wisconsin statutes. *See*, *e.g.*, WIS. STAT. §§ 944.30, 944.31. Moreover, the transcript shows that the court's judgment that the conduct was "immoral" was based on the court's belief that Diaz had a "sickness," which caused him both to commit the assaults shown in the video and to engage in the other, seemingly legal conduct both carelessly and on many other occasions.

14

## CONCLUSION

¶35    In sum, we conclude that the trial court did not err in denying Diaz's motion to suppress the evidence because Diaz had abandoned his property at the hotel.  The court also did not erroneously permit the detective to testify that, based on his training and experience, he believed the victim was unconscious during the sexual assault, or erroneously deny Diaz's postconviction motion without a hearing.  Diaz fails to persuade this court that he is entitled to a new trial or resentencing on any ground.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.